Curtiss *v.* Rochester and Syracuse Rail Road Company.

---

# CURTISS *vs.* THE ROCHESTER AND SYRACUSE RAIL ROAD COMPANY.

In an action against a rail road company, to recover damages for an injury sustained by a passenger by means of a collision, it is not erroneous for the court to charge the jury that, in ascertaining the amount of the plaintiff's damages, it is proper for them to consider the bodily pain and suffering which has occurred, or is likely to occur, in consequence of the injury, but that they cannot act upon conjecture as to the prospective condition or situation of the plaintiff; and that the jury can only consider, in respect to the future, what the evidence renders reasonably certain will necessarily and inevitably result from the original injury.

Bodily pain and suffering which is necessarily and directly to flow from the injury, is as much a part of the injury as the continuance of a physical disability occasioned by it.

Only one action can be maintained to recover damages for a personal injury.    Yet it is not necessary for the injured person to wait until all the consequences of the injury have become fully developed.    He is entitled to sue whenever he thinks proper, and to recover damages for both past and future pain of body, as well as for past and future deprivation of health, or of any of his bodily powers.

But in respect to all the subjects of damage, it is requisite that they should be the legal, direct and necessary results of the injury, and that those which, at the time of the trial, are prospective, should not be conjectural.

Damages arising from bodily pain and suffering need not be alleged specially in the complaint.

Where it appeared, from the evidence, that the cars were thrown off the track of a rail road, and a collision thereby occasioned, because the rails were not right, or from some defect in the mode of securing them in their place; *Held* that the degree of care which the law imposed on the rail road company required them to see that the rails were in a right position, and not to trust exclusively to the lever of the switch, when the rails were in open view while moving it; and also to see that the rails were firmly secured; and that if they omitted to do so they were guilty of negligence.

Curtiss *v.* Rochester and Syracuse Rail Road Company.

It was therefore *held,* further, that the question of negligence was properly submitted to the jury.

Also *held,* that proof, uncontradicted, that the switch was rightly placed, did not rebut all presumption of negligence.

Where, in an action against a rail road company to recover damages for a personal injury occasioned by a collision, there was evidence showing that the plaintiff had been incapacitated by the injury from labor most of the time for nearly two years, and there was also testimony tending to prove that the disability would be permanent, or at least long continued; *Held,* that a verdict of $4,500 was not so excessive as to indicate partiality, prejudice, passion, or any thing improper, in the jury.

THIS was an action to recover damages for an injury received by the plaintiff while a passenger in the car of the defendants, in consequence of the defendants' negligence. The complaint alleged that the defendants were common carriers, for hire and reward, of persons and their baggage, between Syracuse and Rochester. That on the 7th day of August, 1852, the plaintiff became a passenger in the defendants' car at Geneva, to be carried safely to Auburn; and that while on the way the defendants so carelessly and negligently conducted themselves, their railroad, and the cars in which the plaintiff was sitting, that the engine and cars ran off the track at Waterloo, and produced a collision between the different cars of the same train; and that by reason of that collision and the negligence of the defendants, she received an injury on one of her legs. The complaint also set forth and claimed special damages—in all, $12,000. The answer was a denial of each and every allegation of the complaint, except that which alleged that the defendants were a body corporate, and that they owned the said rail road and used it for the conveyance of passengers from Syracuse to Rochester. The action was tried at the Cayuga circuit, in May, 1854, before Justice Johnson. The plaintiff proved the facts set forth in the complaint, and introduced medical and other testimony to show the nature and extent of the injury sustained by her. The collision occurred at Waterloo, where there were three tracks—a middle one, and one on each side, and while the train in which the plaintiff was a passenger was running at the usual speed, upon the middle track. The

train ran off on to a side track, and thence into the ditch.

The court charged the jury that the fact of this accident occurring, was of itself presumptive evidence of negligence on the part of the defendants, and it lay with them to explain and to prove that they were not negligent, in order to discharge them from liability for the injury occurring to the plaintiff; that it was a question of fact for the jury to determine from all the circumstances and evidence of the case, whether the switch was rightly placed, and whether the injury arose from any negligence on the part of the defendants; that if the injury was the result of pure accident only, and without any neglect of the defendants, the plaintiff could not recover; and that it was a question of fact, for the jury to determine from the evidence, whether the injury arose from any neglect of the defendants; and if so, then the defendants were liable. To which charge the defendants excepted. The court further charged the jury that this was not a case for exemplary damages; but that it was for the jury to determine, from the evidence, the amount of damages which the plaintiff had sustained or was likely to sustain in consequence of the neglect of the defendants; and that in ascertaining such damages, they would be justified in taking into consideration, and it would be proper for them so to consider, the bodily pain and suffering which the plaintiff suffered or was likely to suffer in consequence of the neglect of the defendants; and also, for the loss of her time and the physicians' bills and such expenses and injuries as the plaintiff had sustained in consequence of the neglect of the defendants, and to award to the plaintiff such damages therefor as in their judgment would be proper. To which charge, so far as it related to bodily pain and suffering, the defendants excepted. The defendants requested the court to lay down some more definite rule to the jury for estimating damages in cases of injuries of this kind. But the court declined so to do; and the defendants excepted to such refusal. But the court did charge that future or prospective damages could not be awarded by the jury upon conjecture as to the probable condition or situation of the plaintiff, resulting from the injury; and that future damages

Curtiss *v.* Rochester and Syracuse Rail Road Company.

could only be awarded when it is rendered reasonably certain from the evidence, that such damages will inevitably and necessarily result from the original injury. The court further charged, that the presumption of negligence may always be repelled by proof that due and proper care had been taken by the defendants, and if the jury were satisfied that the accident occurred in consequence of some secret defect in the materials, which could not be discovered by human foresight, then the injury was the result of a mishap for which the defendants were not to blame and could not be legally amerced in damages, and the verdict must be for the defendants. The counsel for the defendants then asked the court to charge the jury that they could not take into consideration, in estimating the plaintiff's damages, the bodily and mental pain and suffering which the plaintiff underwent, resulting from the injury ; and that the only compensation which the jury could award to the plaintiff was for the pecuniary loss which she had sustained ; which request the court declined, and the defendants excepted. The defendants then requested the court to charge that the proof, uncontradicted, in this case showed that the switch was rightly placed for the train in which the plaintiff was a passenger, and awaiting its approach ; and that this rebutted any presumption of negligence arising from the accident ; and that the plaintiff could not recover without proof of actual negligence. The court declined thus to charge, and the defendants excepted. The jury found a verdict for the plaintiff for $4,500, and the plaintiffs, upon a case, moved for a new trial.

*Geo. Rathbun,* for the plaintiff. There is in this case no objection or exception for the admission or rejection of evidence. The only points taken or raised on the part of the defendants, are on the charge of the court to the jury. I. The charge of the court, at fol. 87 and 88, is correct, to wit: "The fact of this accident occurring, was of itself presumptive evidence of negligence on the part of the defendants, and it lay with them to explain it, and to prove that they were not negligent, in order to discharge them from liability for the injury occurring to the

Curtiss *v.* Rochester and Syracuse Rail Road Company.

plaintiff." The counsel for the defendants will hardly attempt a denial of the first proposition in this part of the charge. The legal presumption is too well established. This being conceded, as it must be, the second is an unavoidable and necessary consequence. It is a conclusion of law, arising from a legal presumption. Presumptive evidence of negligence is *prima facie* evidence, which, unexplained or uncontradicted, entitles the plaintiff to a recovery. Hence, to avoid the force of this presumption, the defendant must disprove or explain it.

II. This part of the charge contains two distinct propositions; one is undoubtedly correct; if the other be, in fact, incorrect, the defendants cannot take advantage of it, because their exception is to the two propositions combined. It is too broad. An exception or objection must be specific. It must be limited to matter claimed to be erroneous, and must be, in fact, erroneous, not in part, but entire. A general objection to a charge, or part of a charge, must stand or fall upon the question, Is the part so objected to, in the whole erroneous?

III. The rule laid down by the court to guide the jury in the ascertainment of the plaintiff's damages is not erroneous. This part of the charge contains several propositions, various in character, and presenting the various items, proper to be taken into consideration by the jury in determining the amount of damages. It cannot be denied that most of these items are correct. It may now be contended that the bodily pain and suffering " which the plaintiff was likely to suffer in consequence of the neglect of the defendants," as stated in the part of the charge excepted to, was erroneous. This we deny. But we claim that the defendants are not at liberty to raise that question. No such point is made in the case. If the counsel had placed his exception on this precise ground, it is possible the court might have modified its charge in this respect. At all events, the attention of the court would have been called directly to the question, and a decision made, with the knowledge that the counsel regarded it as erroneous. The exception taken, points equally to any and all other portions of the charge to which exception is taken. This exception is too broad. Nothing was said about the damages

alleged in the complaint; no exception was placed on any such ground. It is too late to do so in this court.

IV. The damages found by the verdict of the jury are not excessive.

V. The court was correct in declining to charge as requested by the defendants' counsel.

*Geo. Underwood*, for the defendants. I. The learned judge erred in charging the jury, "that in ascertaining the plaintiff's damages they would be justified in taking into consideration, and it would be proper for them so to consider, the bodily pain and suffering which the plaintiff suffered, *or was likely to suffer*, in consequence of the neglect of the defendants." We are aware that this court in the case of *Morse* v. *The Aub. and Syr. R. R. Co.*, (10 *Barb*. 621,) have held that a jury could give damages for pain and suffering in an action of this kind. Without questioning here the correctness of that decision, we place our objections to the charge of the court in this case upon strictly legal principles. (1.) The charge permits and invites the jury to conjecture or attempt an estimate of the extent, duration and intensity of *future pain* and suffering. This goes much farther than the case cited. Such damages would be analogous to the allowance of unearned and contingent profits, which is never permitted. (*Blanchard* v. *Ely*, 21 *Wend*. 342. *Giles* v. *O' Toole*, 4 *Barb*. 261). The same rule prevails in actions of tort as on contract. (21 *Wend*. 350. 3 *Wheat*. 546. 1 *How*. 28.) (2.) It allowed the jury to go out of the evidence. There was no proof of any future pain, or that there would be any. The age of the plaintiff was not shown, so that the jury might have even that for a starting point in their conjectures of the probable duration of her life, and consequent duration of suffering. (3.) There was no claim for any such special damage in the complaint, and allowance for damages therefor would be giving more than she claimed. The complaint only claims that she suffered pain from the time of the injury to the commencement of the action. It is silent in respect to future pain and suffering. The plaintiff cannot recover any other special damages than those alleged. (3 *Am*.

*Jurist*, 294.   3 *Bing. N. C.* 371.   4 *Blackf.* 277, 8.   2 *Phil. Ev.* 248.   4 *Barn. & Adol.* 514.)   The law presumes that the plaintiff knows what her damages are, and that she will not fail to allege enough.   " And therefore, for the jury to give more damages than the plaintiff declares for, would be unreasonable." (*Lilly's Prac. Rep.* 2d ed. 1.   1 *Archb. N. P.* 414.)   If damages for future loss be claimed, the complaint should have counted upon and averred the same, as was done in the case of *Collett* v. *The London and Northwestern Railway Co.,* (6 *Eng. Law and Eq. Rep.* 307.)   And the jury having been thus instructed upon a question of this kind, where their sympathies would naturally and generously run in favor of the plaintiff against a rail road corporation, it is impossible to say what proportion of the verdict was occasioned by their calculations upon this point. (*Graham on New Tr.* 260 *to* 265.)   (4.)   Such damages must be, in the nature of man's existence and constitution, wholly and absolutely contingent and conjectural ; dependent upon life, health, disease, conditions, circumstances and providences, which we humbly insist are not within the province of a jury, sworn to *give a true verdict,* according to the *evidence* upon the issues, and no other, joined between the parties.   (5.)   The complaint does not aver any pain or suffering *in consequence* of the defendants' neglect.

II.  The learned judge also erred in declining to charge the jury, as requested by the counsel of the defendants, that the proof showed that the switch was rightly placed ; that this rebutted any presumption of negligence ; and that the plaintiff could not recover without proof of actual negligence.   And the court also erred in charging the jury as it did, that it was a question of fact, for the jury to determine, from the evidence, whether the injury arose from any neglect of the defendants ; and if so, then the defendants were liable.   The evidence, uncontradicted, shows that the switch was rightly placed.   The lever and target were rightly placed for the express train, and the evidence shows that it had always theretofore worked well, and did, that morning.   Only a few minutes before the accident the freight train was, at this place, switched off for the purpose

of allowing this express train to pass down. The switch was changed for this purpose, and, after the freight train had passed off the main track to the side track, it was immediately changed or put back to the main track in order to pass this express train then expected. This shows that the defendants used due and proper care at that point. It is true, Halligan says he did not look to see whether the rails moved when he put back the lever and target in an upright position, which would, if the rails had moved, have been correct for the main track and for this express train, nor did Connolly see the track itself after the lever and target were put back in an upright position. Halligan had, while then standing there, just moved the lever and target from an upright position (on the main track) to allow the freight train to pass off, which it did by reason of his moving the lever, and then as soon as the train passed on to the side track, immediately changed back the lever and target to an upright position, *and locked it up,* which made it correct for the main track and the express train. Connolly saw all this done by Halligan. Having done that, which had been uniformly and usually done to allow similar trains of cars to pass that point in safety, (for the train was going at its usual speed,) it is humbly submitted that " due and proper care" was exercised by the defendants. They had done all that very careful men do in such cases. They trusted to the law of mechanics. The lever was constructed upon mechanical principles, and had been uniformly obedient to the law of those principles. It had theretofore performed its office. Human care and foresight cannot change the action of those principles. The law which controls the action of a lever is uniform and not subject to any exceptions. If the defendants had neglected to take any steps to change the lever or target to its correct position for this train, or had left the same unattended for any length of time, or not fastened, it might be regarded, possibly, as negligence on the part of the defendants. But neither of those circumstances exist in this case. Human care and foresight are to be used in a relative sense. Every accident furnishes some new experience even to the most prudent men, and they are thereby

instructed how it might have been possibly avoided. And in such cases, the inquiry should be, have the defendants taken and exercised that care and foresight which very careful men exercise in similar circumstances, and not whether human care and foresight could not have avoided the accident, for that would be to require of men a care and foresight which should prevent every accident except that by the act of God. The rule as laid down that every accident to a passenger while in the care of the carrier is presumptive evidence of negligence so as to shift the burden of proof upon the defendants, though in opposition to the rules of evidence in some other cases, may be well enough; but to add that the defendants can only discharge themselves by showing that they have done all which human care and foresight (made to be regarded equivalent to aftersight) could possibly have done to guard against the accident, is neither just nor equitable. For not an accident has happened (except by the act of God,) that intelligent and scientific men, by a careful consideration of all the circumstances attending the case, could not tell how it might probably or possibly have been avoided. The true rule in this case, we submit, was that which the learned judge was requested to lay down by the defendants' counsel. The plaintiff showed that she was injured. That made out a presumptive case in her favor and cast the burden of proof upon the defendants to show that they had not been negligent, but had used due and proper care (such was the issue,) to have the plaintiff safely conveyed. The defendants showed affirmatively, by witnesses uncontradicted, that the defendants were not negligent, but had used and relied upon the due working of a switch which, only a moment before the accident, had performed its office well and which was proved to have always worked well for that purpose, and to have been rightly placed and carefully locked up for the passing of the express train. The facts and circumstances thus proved by the defendants rebutted and overcame the presumptive evidence which the law makes for the plaintiff by her showing merely an accident; and without any further *proof* or evidence of negligence on the part of the defendants, the

Curtiss *v.* Rochester and Syracuse Rail Road Company.

plaintiff ought not to be entitled to any judgment. Proof overcomes presumptive evidence in all other cases, and in a case of this character it would seem that the proof, which the defendant gave, ought at least to have balanced the presumption which the law indulges in favor of the plaintiff.

III. The injury proved did not warrant the heavy verdict rendered; and, for this reason, the defendants should have a new trial. The plaintiff alleges that one of her limbs is incurably injured. It appears that this alleged injury consists of a superficial or a cutaneous eruption upon one of her limbs. It is the uniform testimony of all the physicians examined, that the bone is not diseased nor the periosteum. And it is the concurrent testimony of all the same medical men that the injury will not prove permanent, and that the plaintiff will recover from it. The neuralgia and pains were occasioned, not by the alleged injury, but by a derangement of the liver and kidneys, and came on some time after the accident. This liver affection could not be occasioned by this injury, but would be by a cold. As to the origin of this cutaneous affection none of the witnesses speak positively, but all concur that her general health, affected by other causes than this injury, has prevented its speedy cure.

*By the Court*, T. R. STRONG, J. The fair construction of the whole charge in relation to bodily pain and suffering of the plaintiff, is, that in ascertaining the amount of her damages, it would be proper for the jury to consider the bodily pain and suffering which had occurred, or was likely to occur, in consequence of the injury, but that they could not act upon conjecture as to the prospective condition or situation of the plaintiff; they could only regard in respect to the future what the evidence rendered reasonably certain would necessarily and inevibly result from the original injury. Thus understanding the charge, I think the instruction as to the propriety of taking into consideration future bodily pain and suffering, on the question of damages, was wholly unobjectionable. Such a consequence, which was necessarily and directly to flow from the injury,

was as much a part of it as the continuance of a physical disability which the injury occasioned. It was certainly proper for the jury, in estimating the damages to the plaintiff, to regard the effect of the injury in future upon her health, the use of her limbs, her ability to labor and attend to her affairs, and generally to pursue the course of life she otherwise might have done; and I do not perceive why it was not equally proper for them to consider its effects in producing bodily pain and suffering. But one action could be maintained by the plaintiff for her damages; it was not necessary for her to wait until all the consequences of the injury had become fully developed; but she was entitled to sue whenever she thought proper, and to recover damages for both past and future pain of body, as well as for past and future deprivation of health, or of any of her bodily powers. In respect to all the subjects of damage, it was requisite that they should be the legal, direct and necessary results of the injury, and that those which at the time of the trial were prospective, should not be conjectural. It was also requisite that they should be supported by such clear and certain evidence as ought to produce conviction in fair minds. All such results, in the aggregate, constituted the injury.

There is nothing speculative or contingent, in a legal view, in regard to such damages. They are wholly unlike the loss of uncertain profits by the breaking up of a bargain, or the derangement of one's business, resulting from an injury.

It was not necessary for the plaintiff to allege the damages under consideration specially in her complaint. They were general damages, implied by law, as much as a continued disability consequent upon a broken limb. The amount was to be controlled by the evidence disclosing the circumstances of the case, as similar damages must be in all such cases. The degree of bodily pain and suffering, as of a bodily disability, of course varies in different cases.

It cannot be said there was no evidence to support this item of the plaintiff's claim. The injury took place in August, 1852; the action was tried in May, 1854; the condition of the plaintiff during the interval was fully proved; and medical testimony

was given in respect to the future consequences of the injury. It is true the age of the plaintiff was not proved, and therefore the evidence was less certain than it would otherwise have been, but I do not think that proof of her age was indispensable to the allowance of some damages of this character.

The question of negligence was properly submitted to the jury. Although there was evidence which was uncontradicted, that the lever and target were rightly placed to bring the switch into a proper position, and that the switch had always before, and but a short time previous to the injury on the same day, worked well, yet no witness was able to testify that he noticed the rails, and that they were right, when the cars came along; and the fact stands out prominently upon the evidence, that the cars were thrown off because the rails were not right, or from some defect in securing them in their place. The degree of care which the law imposes on the defendants required them to see that the rails were in a right position, and not to trust exclusively to the lever, when the rails were in open view while moving it; and also to see that the rails were firmly secured; and if they omitted to do so they were guilty of negligence. I am clearly of opinion that it would have been error to withdraw this question from the jury.

For the same reason, the refusal to charge, that upon the uncontradicted proof the switch was rightly placed, and that that rebutted any presumption of negligence, was correct.

In regard to the amount of damages awarded by the jury, there was evidence showing that the plaintiff had been most of the time thus far since the injury, incapacitated by it from labor; and there was also evidence tending to prove that the disability would be permanent, or at least long continued. I cannot say in view of this evidence, that the sum is too great, much less that the damages are so excessive as to indicate partiality, prejudice, passion, or any thing improper, in the jury.

The motion for a new trial must be denied.

[CAYUGA GENERAL TERM, June 4, 1855. *Selden, Johnson* and *T. R. Strong*, Justices.]