(18 Misc. Rep. 24.)

## HOROWITZ v. HAMBURG–AMERICAN PACKET CO.

(Supreme Court, Appellate Term, First Department. September 28, 1896.)

1. NEGLIGENCE—RES IPSA LOQUITUR.

The maxim, "Res ipsa loquitur," applies where plaintiff, while standing on the deck of defendant's steamship, on which she was a passenger, was injured by the fall of baggage which had been piled up on the deck.

2. TRIAL—RECEPTION OF EVIDENCE—DISCRETION.

It is discretionary with the trial court to receive on the redirect examination evidence which should have been elicited on the direct examination.

3. EVIDENCE—MATERIALITY.

In an action for injuries to a passenger on defendant's ship, caused by the fall of baggage which had been piled up on the deck, witnesses, who had testified as to their experience in ocean travel, and that such piling of baggage was the common practice on ships, will not be permitted to state whether or not they believe such piling of baggage to be consistent with the safety of passengers, and whether or not they had ever heard of any accident resulting therefrom.

4. DAMAGES—PERMANENT INJURIES—EVIDENCE.

Evidence that at the time plaintiff was injured she was a strong, healthy woman, fifty years of age; that at the time of the trial three years later she was still suffering from the injuries sustained, and under treatment therefor, reduced in weight, and physically feeble,—is sufficient to authorize the jury to make an award for permanent injuries, though no expert had testified that the injuries were permanent. Daly, P. J., dissenting.

5. EVIDENCE—PRESUMPTION—FAILURE TO CALL WITNESS.

Failure of a party to call witnesses who had knowledge of the facts in dispute does not raise a presumption that the testimony would have been adverse to such party, where it does not appear that the testimony was not equally available to the other party.

Appeal from city court of New York, general term.

Action by Isabella Horowitz against the Hamburg-American Packet Company to recover damages for personal injuries sustained by plaintiff while a passenger on one of defendant's steamships. The injury was alleged to have been caused by the careless piling of baggage on a part of the deck to which passengers were allowed access. A judgment in favor of plaintiff was affirmed by the city court (37 N. Y. Supp. 1146), and defendant appeals. Affirmed.

Argued before DALY, P. J., and McADAM and BISCHOFF, JJ.

Julius J. Frank, for appellant.

Armour C. Anderson and Morris Cukor, for respondent.

BISCHOFF, J. At the time of the accident, the plaintiff, then upwards of 50 years of age, and four of her children, were passengers on board of the defendant's steamship Augusta Victoria, plying between the city of Hamburg, in Germany, and the port of New York. On August 28, 1892, the vessel had arrived at the end of the voyage, and was moored to the dock at Hoboken, N. J., awaiting the disembarkment of her cabin passengers. Pending such disembarkment, the steerage passengers, including the plaintiff, were, without caution or remonstrance on the part of those in command, permitted to occupy the upper deck, upon which, some time before the landing, the passengers' baggage had been piled to man's height, leaving a passageway of about three feet in width between

the pile and the guard rail at the outer edge of the deck. While the plaintiff was standing at the railing on the dock side, facing the dock, the baggage behind her, without any apparent direct cause, shifted. Several heavy pieces of baggage fell upon the plaintiff, striking her upon the back, and thus caused the injury complained of in this action. The facts touching the fall of the baggage, and narrated above, bring the cause squarely within the rule "Res ipsa loquitur" (Volkmar v. Railway Co., 134 N. Y. 418, 31 N. E. 870; 16 Am. & Eng. Enc. Law, 448; 2 Rice, Ev. 1099), which, when applied to the relation of carrier and passenger, is at least of undiminished intensity (Miller v. Steamship Co., 118 N. Y. 199, 23 N. E. 462; Railroad Co. v. Anderson [Md.] 20 Am. St. Rep. 483 [20 Atl. 2] and note; also cases collated in note b, Barnowski v. Helson [Mich.] 15 Lawy. Rep. Ann. 35, 50 N. W. 989), and, failing of any circumstance tending to show an obvious risk of injury by the presence upon the upper deck near the baggage pile, the permission of such presence without caution or remonstrance on the part of the defendants' officers and crew absolved the plaintiff from all imputation of contributory negligence. True, the defendant did introduce testimony by its servants tending to show that at the time of the accident the vessel was not yet moored, that a sudden and unavoidable lurch caused the baggage to fall, that the plaintiff had been previously warned to keep away from the baggage, and that she had gained access to the upper deck despite a rope barrier to prevent it; but it is to be borne in mind that upon a conflict of evidence, or in case of the testimony of witnesses interested in the issue of the trial, the jury alone are to determine the facts (Volkmar v. Railway Co., supra), and that upon appeal from a judgment of affirmance in the city court of New York it is beyond our province to reverse, although, in our opinion, the verdict may be against the weight of the evidence. Meyers v. Cohn, 4 Misc. Rep. 185, 23 N. Y. Supp. 996. The motion for a nonsuit was well denied, and it remains only to notice the exceptions which were taken to the rulings of the trial justice and to his charge and refusals to charge.

Upon the plaintiff's redirect examination she was permitted, over the defendant's objection that the testimony was immaterial, and that it should have been given upon her direct examination, to describe Castle Garden, from which place she claimed to have been taken to her husband's home. To the first objection it is to be said that the testimony was not prejudicial to the defendant, and could in no manner have affected the result of the trial; to the second objection, that the admission of the testimony at that stage of the action was discretionary with the court. In part the witness' answer was irresponsive, but it does not appear that such testimony was asked to be stricken out.

Jennie Horowitz, the plaintiff's daughter and fellow passenger, was asked upon her direct examination as a witness in her mother's behalf to state what happened while the latter was consulting the ship's surgeon immediately after the accident, to which question the defendant's counsel objected, upon the ground of immateriality

of the testimony only. This objection was properly overruled, as the immateriality of the testimony sought to be elicited was not then apparent. True, the witness' answer contained much that was incompetent and irrelevant as well as immaterial; but, if the defendant felt aggrieved thereby, counsel should have asked the court to strike such matter out, and to instruct the jury to disregard it.

Carl Schmidt, William Mayer, Edward L. Mays, Bastain von Walraven, Nicholas Blanquet, Adolph Albers, and Gustav Bachman, witnesses for the defendant, were permitted to testify to their experience in ocean travel, and that the piling of passengers' baggage, previous to landing, at the place chosen by the defendant's servants in the case before us, was the common practice upon ocean steamships. When the witnesses were asked to state whether or not they believed such piling of the baggage to be consistent with the safety of the passengers, and whether or not they had ever known or heard of any accident resulting therefrom, the questions were excluded, and, in our opinion, properly so. It is sufficient to observe that the gravamen of the plaintiff's charge of negligence was not that the defendant's servants had piled the baggage at a place which necessarily menaced the safety of the passengers, but that the baggage was carelessly piled at what may well have been an ordinarily proper place. Hence the testimony excluded was wholly immaterial.

The question asked of Dr. Wheeler, physician and surgeon in charge of the medical department of the emigration service, "Is it [the approach to the place of inspection at Ellis Island] constructed so as to compel persons to walk unaided, so that your assistant may observe whether the person is a sound or an unsound person?" was clearly incompetent, as calling for a conclusion. Besides, it was substantially answered by the testimony of the same witness which immediately followed the question excluded.

Capt. Barends, in command of the Augusta Victoria at the time of the accident, examined as a witness for the defendant, was asked upon his direct examination: "Please state what the rule is on board the ships of the company as to injuries suffered in reference to any report being made in reference thereto. Did you at any time hear that a passenger by the name of Horowitz claimed to have been injured on board the Augusta Victoria in August, 1892?" Assuming that the testimony called for was admissible, still no harm resulted to the defendant from its exclusion, as it was conceded by the testimony of the defendant's witness Dr. Hildebrand, the ship's surgeon, that he saw the accident complained of, that it was reported to him, and that he examined the plaintiff to ascertain the extent of her injury. The same is to be said with regard to the exclusion of a question similar to the one last above quoted and addressed to the defendant's witness Kaeding. The testimony of Dr. Hildebrand that access to the upper deck, where the baggage was piled, "was strictly forbidden to passengers," without more, was a mere conclusion, and no error is apparent from the court's direction that it be stricken out.

Adolph Albers was asked upon his direct examination by the defendant's counsel: "State whether or not there is any rule forbidding steerage passengers from passing through these doors [leading to that part of the vessel where the baggage was piled]." The question was objectionable, in that it did not call for testimony concerning a rule which was extant at the time of the accident. Furthermore, the fact of the rule became unimportant by the admission of the defendant's counsel, in answer to the court's inquiry, that he was without evidence tending to show notice of it to the plaintiff.

As already stated, the fall of the baggage without any apparent direct cause was evidence of the negligence within the rule "Res ipsa loquitur." The court, therefore, properly refused to charge that, "if they [the jury] find the method employed by the defendant in storing baggage before entering port was the method usually employed, * * * they must presume the absence of negligence on the part of the defendant."

The complaint alleged that the injury sustained by the plaintiff was in part of a permanent character, and the court charged the jury that in the assessment of the plaintiff's damages they were at liberty to consider "the lasting or permanent character" of the injury, to which charge the defendant's counsel excepted. True, there was no expert testimony to support the fact of lasting or permanent injury. But such would not have been essential if the injury had been of a visible, structural kind, as, for instance, the loss of a hand, an arm, a foot, or a leg. The opinion of a physician or surgeon would not in the least strengthen the objective fact of a permanent injury in such a case. It is equally so where the fact of the injury is only subjectively apparent. Is it not within the common experience of mankind that a violent blow upon the back or spine and other parts of the human body will create functional disturbances from which the particular person does not wholly recover? The opinion of the physician or surgeon, because of his peculiar skill in the detection of such injury, may be resorted to in such cases; but, even so, his testimony is in the nature of advice, and not conclusive upon the jury, if their own experience demonstrates the improbability of its accuracy. It was in evidence that at the time of the accident, in August, 1892, the plaintiff was a strong, healthy woman, fifty years of age; that at the time of the trial, in May, 1895, nearly three years later, she was still suffering from the injury sustained, and under treatment therefor, reduced in weight, and physically feeble. Is the deduction from these facts that the violence of the blow caused an organic abnormity, or functional disturbance, which, in view of the plaintiff's advanced age, will in some degree endure for the remainder of her life, an unreasonable or improbable one? We think not. Record v. Village of Saratoga Springs, 46 Hun, 448, affirmed 120 N. Y. 646, 24 N. E. 1102. It may be that, without evidence tending to show with reasonable certainty the extent of the permanent impairment of the plaintiff's health, the jury would not have been justified in the award of a substantial sum for lasting or permanent injury; but

the question presented to us is not one which concerns the degree of such permanent impairment. It is claimed for appellant, in effect, that the trial court erred in its charge to the jury that the latter could award any sum for a permanent impairment of the plaintiff's health, whatever the extent of such impairment may be; and to this we do not accede. The plaintiff's right of recovery in this action comprehended future as well as past suffering (Schuler v. Railroad Co., 1 Misc. Rep. 351, 20 N. Y. Supp. 683), whether the result of a curable or permanent injury (Ehrgott v. Mayor, etc., 96 N. Y. 264, 277).

For the reasons last above stated, also, the trial court did not err in its refusals to charge that there was no proof that the plaintiff, at the time of the trial, was still suffering as a result of her injury, or that the proof failed to show that the plaintiff's injury was of a permanent character.

The plaintiff did not call as witnesses in her behalf her husband, certain of her children, and some of the physicians who had at various times since the accident prescribed for her; but, for aught that appears, the testimony of the persons not called was as available to the defendant as it was to the plaintiff. Under the circumstances, therefore, the court rightfully declined to charge, at the request of the defendant's counsel, that the nonproduction by the plaintiff of the persons alluded to as witnesses in her behalf would authorize an inference that, if called, they would have testified adversely to the plaintiff's right of recovery. Lawson, Pres. Ev. 23. Neither did the evidence disclose that the persons not called as witnesses by the plaintiff had any better knowledge of the facts than those called, or that they had even equal knowledge; and the "mere omission of a party to a civil action to call a witness who at the most has no other or better knowledge of the matter in dispute than those who are produced and give evidence, is not necessarily suspicious, entitling the adverse party to every presumption to his prejudice." Bleecker v. Johnston, 69 N. Y. 309, 312.

It was not error for the court to refuse to charge that the "medical testimony" demonstrated an improvement in the plaintiff's physical condition since the accident. The testimony of the plaintiff and of her daughter was at variance with the testimony alluded to by the defendant's counsel in his request, and the jury's conclusion was to be based upon all the evidence.

The judgment of the trial and general terms below should be affirmed, with costs.

McADAM, J. (concurring). But one action could be maintained by the plaintiff for her damages, and she was entitled to recover upon proper proofs for both past and future pain of body, as well as for past and present depreciation of health, or of any of her bodily powers. Curtiss v. Railroad Co., 20 Barb. 282, 292; Aaron v. Railroad Co., 2 Daly, 127; Kane v. Railroad Co., 132 N. Y. 160, 30 N. E. 256; Miller v. Steamboat Co., 73 Hun, 150, 25 N. Y. Supp. 924, affirmed 149 N. Y. 598, 44 N. E. 1126. The court below laid down this general rule in instructing the jury, and if the defendant,

by its exception to that portion of the charge relating to the lasting or permanent character of the plaintiff's injuries, intended to rest upon the technical position that such damages had not been established to a reasonable certainty, or by the best evidence the nature of the case afforded (Curtis v. Railroad Co., 18 N. Y. 534, 542; Griswold v. Railroad Co., 115 N. Y. 61, 63, 21 N. E. 726), the specific ground of objection should have been stated to make the purpose clear. It has been held in many cases that the party complaining of the charge of a judge must put his finger on the point as to which he complains. If he does not do so, no court of review can regard it. The rules upon this subject are tending rather towards increased strictness than to relaxation. They have their foundation in a just regard to the fair administration of justice, which requires that when an error is supposed to have been committed there should be an opportunity to correct it at once. Jones v. Osgood, 6 N. Y., at page 235; McGinley v. Insurance Co., 77 N. Y., at page 497; Lindheim v. Duys, 11 Misc. Rep. 16, 31 N. Y. Supp. 870. But there was evidence given from which the jury were authorized to find that the plaintiff would in all probability continue to suffer in the future as in the past. The accident occurred August 28, 1892, and on the trial, nearly three years afterwards, the plaintiff, after testifying to the serious character of her injuries, how she had suffered, and the medical treatment she had undergone, proved that she was still afflicted,—had pains in the side, over the heart, in the stomach, in the head, with trouble in breathing, cold feet, no appetite, was often compelled to go to bed during the day,—and that, while she had always been a strong, healthy woman before the accident, she had become reduced in weight, and very weak, since it occurred. It would be contrary to all experience to say that these facts did not establish injuries of a lasting character. See People v. Gonzalez, 35 N. Y., at pages 60–62. They aptly describe a wrecked physical condition, which continued with slight variations for nearly three years, with a certainty of extending into the future without any apparent prospect of relief; and they bring the case within the rulings in Kane v. Railroad Co., and Miller v. Steamboat Co., supra, that the submission of the question of future loss upon such proofs is proper. The request to charge that there was no proof that the plaintiff had sustained any lasting results of the injuries, and was not now suffering from the accident, sought to withdraw from the jury the fact of the plaintiff's then enfeebled condition, though a direct consequence of the injury, and a proper element of damage. It assumed the fact to be contrary to the evidence narrated, and was properly declined. Baylies, New Trials, 183.

No error was committed to the prejudice of the defendant, and I concur for affirmance.

DALY, P. J. (dissenting). The court charged the jury that in assessing the damages to the plaintiff they had the right to consider the lasting or permanent character of the injuries, to which the defendant excepted, and asked the court to charge that, there

being no proof that the plaintiff has suffered any lasting results of the accident, or that she is now suffering from the accident, or that she is likely to suffer any permanent injury resulting therefrom, the jury cannot award her any compensation for lasting or permanent injuries. This was refused, and defendant excepted. Taking the evidence of plaintiff, and all the possible inferences from it, it appears that she was bruised by the fall, suffered pain; that she was a strong, healthy woman, fifty years of age, at the time, and that nearly three years after, when testifying on the trial, she was still suffering from it, was reduced in weight, and physically feeble; but there was no testimony of any medical expert that her injuries were incurable, nor even that they were reasonably certain to be permanent, or to continue for any time longer; no bones were broken, and she testified that no physician ever told her which of her internal organs was injured, and she did not ask about it; that she was ill in general, feels hurt in the direction of her heart, chest, and stomach, and the upper part of her body hurts. It would seem from this state of the proof that there was nothing from which the jury could reasonably determine that the plaintiff's injury was lasting.

In Filer v. Railroad Co., 49 N. Y. 42–46, the court observed:

"There is no evidence, other than that of experts, by which courts and juries can determine whether a disease or an injury has been or can be permanently cured, or what its effect will be upon the health and capability of the injured person in the future."

In Mosher v. Russell, 44 Hun, 12, the supreme court said:

"Two medical experts were examined on the trial by the plaintiff, but neither of them expressed any opinion as to the probable future effect of the alleged injury upon the plaintiff, and there appears to be no evidence in the case from which the jury would have a right to speculate or infer that the injury was permanent, or one from which the plaintiff was likely to suffer in the future."

As was said in Griswold v. Railroad, 115 N. Y. 61, 64, 21 N. E. 726:

"Medicine is far from being an exact science. At the best, its diagnosis is little more than a guess, enlightened by experience. The chances of recovery in a given case are more or less affected by unknown causes and unexpected contingencies. The wisest physician can do no more than form an opinion based upon a reasonable probability."

If a defendant's liability in damages may be allowed to rest upon opinion, it should not be the opinion of a jury without the help of science. If a guess is to have such serious consequences, it should be the guess of a medical man of learning and experience. These observations do not apply, of course, to the loss of a member, nor, perhaps, in the case of a fracture (Bateman v. Railroad Co., 47 Hun, 429; but see Crawford v. Railroad Co., 55 N. Y. Super. Ct. 255; Schmidt v. Railroad, March 3, 1892, Sp. Term, Com. Pl.[1]); but "damages are to be proved, and none can be allowed except such as are shown by the proof to be at least to a reasonable degree certain. * * * Future damage can only be awarded

---

[1] Not reported.

when it is rendered reasonably certain from the evidence that such damage will inevitably and necessarily result from the original injury." Curtis v. Railroad Co., 18 N. Y. 534. In this case the jury had nothing before them except the condition of the plaintiff at the time of the trial and before. She could not, of course, be permitted to say that that condition would continue. No medical man was called to testify that it would continue, and therefore the jury had no legal basis for concluding that it would. For the error in the charge, and refusal to charge, the judgment should be reversed, and a new trial ordered.