BALTIMORE & OHIO R. CO. *v.* BERRY.

No. 703. Argued April 26, 1932.—Decided May 16, 1932.

*Mr. Rudolph J. Kramer*, with whom *Messrs. Bruce ·A. Campbell, Morison R. Waite,* and *Wm. A. Eggers* were on the brief, for petitioner.

*Mr. John S. Marsalek,* with whom *Mr. Wm. H. Allen* was on the brief, for respondent.

Mr. Justice Stone delivered the opinion of the Court.

In this case certiorari was granted to review a judgment of the Supreme Court of Missouri, 43 S. W. (2d) 782, sustaining a recovery by respondent in the Circuit Court of the City of St. Louis, under the Federal Employers' Liability Act. Respondent, who was employed by petitioner in interstate commerce as a flagman or rear brakeman on a freight train proceeding over its line from Illinois to Indiana, was injured by a fall when attempting to alight in the night-time from a caboose, which was standing on a bridge or trestle, so narrow as to afford no foothold to one getting off the train at that point. The state supreme court held that the trial court rightly overruled petitioner's demurrer to the evidence and correctly submitted to the jury the question of the petitioner's negligence, by its agents and servants, in ordering or permitting the plaintiff to alight from the caboose where it was dangerous to do so.

Respondent, an experienced railway brakeman, had been in the employ of the petitioner in that capacity for about nine years. For a number of years his regular run had been over petitioner's line where he was injured. The testimony was sharply conflicting, but the jury, if it believed the testimony most favorable to the respondent, could have found the following facts. The respondent was one of a crew of five men on a train consisting of engine, tender, forty-two cars and caboose, proceeding easterly in the direction of Xenia, Illinois. He was serving as rear brakeman and rode in the caboose with the conductor. The train was under orders, known to the crew, including the respondent, to enter a passing track at Xenia and wait there until it was passed by another train

going west. About three miles west of Xenia, respondent and the conductor observed a blazing hot box on one of the cars; the train was stopped on the main line, and both went forward to examine the hot box. The conductor then sent respondent to the engine to get a bucket of water to put out the fire, instructing him to say to the engineer that at the next stop, at Xenia, they would finish any necessary work on the box. Respondent communicated this message to the engineer; the fire was extinguished and the train proceeded on its way until it halted at Xenia. The stop there was made for the purpose of opening the switch, so that the train could enter the passing track, with the engine from one and one-half to three car lengths from the switch, and the caboose, at the rear end of the train, standing on the trestle. The respondent testified that he and the conductor were in the cupola of the caboose when it stopped and that the conductor then said: " Get out and go ahead and fix the hot box "; that he knew at the time that the train was not on the passing track; that he immediately took his lantern, walked down the caboose steps, from which he stepped into space and fell into the ravine which was spanned by the trestle.

The state supreme court held that under the instructions given by the trial court, the jury, in order to return a verdict for respondent, was required to find that the petitioner was negligent both in stopping the caboose on the trestle and in directing or permitting the respondent to alight there. It held, rightly, that there was no evidence that the petitioner was negligent in stopping the train where it did, but as it concluded that petitioner negligently directed or permitted respondent to alight at that point, it upheld the verdict as necessarily involving a finding of such negligence on the part of the conductor.

There was no evidence that either the conductor or respondent knew that the caboose had stopped on the trestle and, as they were together in the cupola of the caboose

when the train stopped, their opportunity for knowledge, as each knew, was the same.  Hence, there is no room for inference that the conductor was under a duty to warn of danger known to him and not to the respondent, or that respondent relied or had reason to rely on the conductor to give such warning.  Nor was the request to alight a command to do so regardless of any danger reasonably discoverable by respondent.  The conductor did not ask respondent to alight from the caboose rather than from one of the forward cars standing clear of the trestle, where it was safe, or to omit the precautions which a reasonable man would take to ascertain, by inspection, whether he could safely alight at the point chosen.  There was no evidence that the respondent could not have discovered the danger by use of his lantern or by other reasonable precautions, or that he in fact made any effort to ascertain whether the place was one where he could safely alight.

The state supreme court thought that it was the duty of the conductor to ascertain, by inspection, whether respondent could alight with safety, and to give warning of the danger if he could not.  But there was no evidence of any rule or practice, nor do we know of any, from which such a duty could be inferred.  The conductor could have no knowledge of such danger, nor was he in a position to gain knowledge, superior to that of other trainmen, whose duty it was to use reasonable care to ascertain, each for himself, whether, in doing his work, he was exposing himself to peril.  A duty which would require the conductor, whenever the train was stopped and trainmen were required to alight, to inspect the place and warn of danger where each might get off the train, would be impossible of performance.

There was no breach of duty on the part of the conductor in asking the respondent, in the performance of his duty, to alight or in failing to inspect the place where

276

he alighted or to warn him of the danger. If negligence caused the injury, it was exclusively that of the respondent. Proof of negligence by the railroad was prerequisite to recovery under the Federal Employers' Liability Act.

*Reversed.*