**KENTUCKY & INDIANA TERMINAL RAILROAD COMPANY, Appellant,**

v.

**George T. MARTIN, Appellee.**

Court of Appeals of Kentucky.

Jan. 31, 1969.

Rehearing Denied March 28, 1969.

Railroad Company, was injured when the train he was operating collided head on with another train owned by the appellant company on February 24, 1964. Martin's claim is being prosecuted under the Federal Employers' Liability Act, 45 U.S.C. Section 51 et seq. (FELA). The jury found that the negligence of the respective parties contributed to the accident in the ratio of 70% by the railroad and 30% by Martin, and returned its verdict for Martin in the sum of $59,856.96. The railroad presented a counterclaim seeking recovery of about $46,000 as damages to its property resulting from the accident. The trial court dismissed the counterclaim without submitting it to the jury.

Appellant presents nine assignments of error which we condense: (1) A directed verdict for the railroad should have been given; (2) improper remarks were made by the trial judge; (3) errors were committed in the instructions; (4) the verdict is excessive; (5) the court erred in rejecting competent evidence; and (6) the court erred in dismissing the counterclaim.

Martin was operating Train No. 60 consisting of about 24 freight cars loaded with coal. The front end of the locomotive was coupled to the train of cars so that the cab of the locomotive was at the head of the train as the locomotive pulled the consist of cars in reverse. Martin's train was proceeding southwardly on a downgrade on a track referred to as the "beltline," admittedly within the "yard" where the "yard-speed rule" was applicable. The collision between Train No. 60, operated by Martin, and Train No. 58 occurred on a blind 18-degree curve. The yard-speed rule to which we have referred provides:

"Unless otherwise provided for trains and engines must move on all yard and turnout tracks at yard speed, expecting to find a train moving in the opposite direction on the same track. Where such tracks are on curves or for any reason the view is obstructed or reduced, the speed must be so regulated that a stop can

Albert F. Reutlinger, Louisville, for appellant.

Theodore Wurmser, Harris J. Berman, Louisville, for appellee.

DAVIS, Commissioner.

George T. Martin, an engineer in the employment of Kentucky & Indiana Terminal

be made in half the distance of the range of vision."

 Martin said that he was operating his train at about seven miles per hour, but there was evidence for the railroad strongly indicating that the speed of the train immediately before the collision was fifteen miles per hour. It seems plain from the evidence, and apparently it was so found by the jury, that Martin's speed was not so regulated that a stop could be made in half the distance of Martin's range of vision. In short, we think the evidence leaves no room for dispute that Martin violated the yard-speed rule. The railroad contends that his violation of that rule, as a matter of law, forecloses his right to recover damages. The parties recognize that under FELA contributory negligence is not an absolute bar to recovery. 45 U.S.C. Section 53, provides in part:

" * * * the fact that the employee may have been guilty of contributory negligence shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee: *Provided,* that no such employee who may be injured or killed shall be held to have been guilty of contributory negligence in any case where the violation by such common carrier of any statute enacted for the safety of employees contributed to the injury or death of such employee."

Appellant relies on numerous decisions from this and other courts to support its argument that despite the provisions of 45 U.S.C. Section 53, an employee may not recover under the FELA, if the cause of his injury is his own violation of a safety operating rule. Some of the authorities cited by appellant are Kentucky & T. R. Company v. Minton, 167 Ky. 516, 180 S.W. 831 (1915); Louisville & N. R. Company v. Noble's Adm'x, 246 Ky. 86, 54 S.W.2d 636 (1932). In the Noble case, this court referred to Baltimore & O. R. Company v. Berry, 286 U.S. 272, 52 S.Ct. 510, 76 L.Ed. 1098, and Unadilla Valley R. R. Company v. Caldine, 278 U.S. 139, 49 S.Ct. 91, 73 L.Ed. 224. Appellant relies heavily upon Chicago, St. P., M. & O. R. Company v. Arnold (1947) (CA8), 160 F.2d 1002. That decision does support appellant's contention that a servant's disregard of a specific order or of a standing safety rule bars recovery, even though the injury was due as well to the negligence of other employees of the railroad company. In reaching that conclusion, the Court of Appeals for the 8th Circuit cited and relied on a number of earlier decisions, all of which were rendered prior to the 1939 amendment to FELA.[1] There was a strong dissent in the Arnold case, and it is our view that the majority of the court there misapplied the law by reason of failing to perceive the significance of the 1939 amendment to the FELA as it affects the precedents cited and relied on by the court. We are unable to fathom how it can be reasoned that the violation of a safety rule or direct order is such a unique type of contributory negligence as to completely bar recovery, in face of the language contained in Sections 51 and 53 of the FELA. In 45 U.S.C. Section 51, in specifying the basis of liability, it is provided in pertinent part:

"Every common carrier by railroad [engaged in interstate or foreign commerce] shall be liable in damages [for personal injury or death of employees] resulting *in whole or in part* from the negligence of any of the officers, agents, or employees of such carrier, * * *." (Emphasis added.)

As already noted, Section 53 of the FELA specifically points out that contributory negligence of the employee does not bar recovery entirely, and that same section pointedly states that a railroad company may not have diminution of damages on account of an employee's contributory

---

1. Atchison, T. & S. F. R. Company v. Ballard, 5 Cir., 108 F.2d 768, was rendered after 1939, but arose from an accident occurring before 1939.

negligence, if the accident occurred by reason of the violation by the carrier of any statute enacted for the safety of employees. In our judgment, the reasonable interpretation of the FELA sections we have mentioned requires the conclusion that contributory negligence of the employee is never a complete bar to recovery, if it is found that negligence on the part of the railroad contributed in any degree to cause the injury. There are, of course, cases which have denied recovery on the basis that the employee's negligence was the sole cause of the accident and others reaching that result on the ground that the railroad was free of any negligence.[2] Neither of those situations obtains in the case at bar. Indeed, the railroad does not seriously contend that it was free of negligence but insists only that the violation of the yard-speed rule was the only negligence attributable to Martin, and that it was of such character as to completely bar Martin's recovery. We hold that contention to be without merit. See Rogers v. Missouri Pacific R. Co., 352 U.S. 500, 77 S.Ct. 443, 1 L.Ed.2d 493, in which it is stated that a jury issue is presented in an action under the FELA if the evidence reasonably tends to show that negligence of the employer played any part, even the slightest, in producing the injury for which damages are sought.

In 59 A.L.R.2d 585, it is said in part:

"It seems fairly clear that on the whole the chances of recovery by an employee acting in violation of a railroad rule, order, or instruction, have been enhanced since the passage of the 1939 amendment, although recovery has still been denied, even in some cases where an employee other than the one injured or killed participated in the violation, on the basis of (sic) that the negligence of the plaintiff was the sole proximate cause."

In that same annotation, 59 A.L.R.2d at page 584, it is pointed out that railroad rules, orders, or instructions cover almost every conceivable exigency. We think the application of the rule urged by the appellant would virtually extinguish the rights of employees under the FELA.

■ The appellant complains of alleged improper remarks by the trial judge in the course of the trial. The first instance referred to occurred when appellee left the stand after being cross-examined about the yard-speed rule at which time the trial judge admonished the jury: "You have heard in evidence, or it has been placed in evidence, various rules and regulations of the railroads. You are to consider those rules and regulations in and as part of whether or not under the instructions that will be given to you, which will be the law of the case, and you may consider those rules in determining whether or not under the instructions that will be given to you, the defendant exercised ordinary care in the performance of the duties that will be imposed on it in the law, the instructions given to you. The rules and regulations however are not the law of this case." We do not consider this comment of the court as violating the rule forbidding a judge to comment on the evidence. Neither do we regard the statement as being a piece-meal giving of instructions to the jury. We do not regard the comment of the judge as prejudicially erroneous, nor are we willing to say it was erroneous at all.

■ Another complaint of a comment by the judge arose when a witness for appellant was giving testimony concerning speed discs taken from the two locomotives involved in the accident. The court had directed the witness to limit his testimony to relating what was shown on the discs and said:

"THE COURT: Just tell the jury what it shows without explaining anything and without emphasizing anything.

A. It shows on the center belt a much heavier—

2. E. g. Harris v. Chesapeake & Ohio Ry. Co., Ky., 430 S.W.2d 134.

THE COURT: Or whether what you claim it shows. All right, go ahead."

We see no error in this colloquy. In the first portion of his admonition, the judge had instructed the witness to relate what the discs showed. He merely undertook to clarify the fact that his own statement was not to be regarded by the jury as indicative of the judge's opinion that the discs indeed showed what the witness said they showed, so he enlarged his admonition to incorporate the thought that the witness' testimony merely reflected what the witness said the discs showed.

■ Later in the course of the testimony of the same witness, the following colloquy occurred:

"137. So that the discs themselves show that there was some error in the mechanisms themselves by reason of the fact that they don't agree on time. Isn't that fair to state?

A. May I explain?

THE COURT: No, answer the question and then you can explain any way you want to.

A. It is a fair assumption.

THE COURT: Now, if you want to explain it go ahead.

A. These discs are checked by the electrician on duty. The electricians are not required to have a standard watch. Most of them carry a wrist watch and as such they are not tested, they are not checked. We do not attempt to use these speed recorders to indicate the precise second that a movement took place, but rather to indicate the general area of the speed and the distance.

THE COURT: Do I understand you to say then that the whole system is not run in a precise scientific fashion?

MR. REUTLINGER: I move that the jury be discharged.

THE COURT: All right, just a moment. Answer the question.

A. To the extent of the exact time that is correct.

THE COURT: Overruled."

We are unable to see any basis for complaint as to this occurrence. Appellant calls attention to Chism v. Lampach, Ky., 352 S.W.2d 191; Northeast Lumber Company v. Harris, 220 Ky. 454, 295 S.W. 455; City of Prestonsburg v. Mellon, 220 Ky. 808, 295 S.W. 1064; and Barnett v. Commonwealth, Ky., 403 S.W.2d 40, in which this court dealt with questions of improper comment by the trial judge. We adhere to the principles of those cases but do not find them applicable to the one before us now, since we do not regard the comment as improper.

■ Appellant complains that it was error for the court to instruct on permanent injury and permanent diminution of power to earn money. This contention overlooks the fact that a qualified doctor testified that he had treated the plaintiff and examined him and expressed the opinion that the plaintiff did suffer permanent injury. There were circumstances which tended to weaken the impact of the doctor's evidence in this regard, but the jury had the prerogative of resolving any evidentiary conflicts and was warranted in ascribing probative value to the doctor's evidence.

■ The appellant complains that a specific instruction should have been offered to the jury, pointing out to them that they should not allow any damages arising by reason of a pre-existing physical defect of the appellee-plaintiff. We do not think such an instruction was required in light of the fact that the jury was instructed to award damages to appellee in such sum as it believed from the evidence were caused "as the direct and proximate result of the injuries which were the direct and proximate result of the accident." We do not feel that the jury could have been misled into supposing that it

was authorized to allow Martin damages for some disability which pre-existed the accident.

■ Complaint is made that the court erred in instructing the jury that the federal statute abolished the defense of assumed risk. It is not claimed that the instruction erroneously stated the law, but it is argued that nobody contended for assumption of the risk as defense. In other words, says appellant, this abstract, correct instruction left the jury under the impression that the appellant had made such a contention and lost, thereby putting appellant in a bad posture before the jury. We simply are unable to assign that construction to the situation and find no prejudicial error with respect to the giving of the instruction mentioned.

■ The appellant complains that the trial court did not instruct the jury that Martin had a specific duty to obey the yard-speed rule. The instruction which fixed Martin's duties merely said in pertinent part: "It was the duty of the plaintiff, Martin, * * * to exercise ordinary care for his own safety." We agree that the court should have instructed the jury of Martin's duties to observe the yard-speed rule, but we are unable to say that the failure to so instruct the jury in this case was prejudicial error. The appellant offered no evidence to remotely suggest any negligence of Martin, except his violation of the yard-speed rule. In its brief filed in this appeal, appellant's counsel, at Page 23 of the brief, recites: "In our case the jury has found that Martin's negligence contributed to cause the accident (T. 598). *His only fault was violation of the yard speed rule.*" (Emphasis added.) Since there was no other possible basis for the jury's finding that Martin was negligent, except its finding that he violated the yard-speed rule, it is inconceivable that the jury would have found him contributorily negligent in a greater degree if it had been instructed specifically that Martin was obligated to obey the yard-

speed rule. A different question would arise if the jury had found Martin free of contributory negligence, but its finding that he was contributorily negligent serves to cure any error in the court's omission from the instruction.

■ Appellant asserts that the verdict is so excessive as to indicate passion and prejudice on the part of the jury. We do not reach this assignment of error, because the appellant has not preserved it for appellate review. No motion for a new trial was filed. At no time did the appellant seek a ruling from the trial court on its contention that the verdict was excessive. Under our system of appellate review, we may not put the trial judge in error for failure to grant relief which he was never requested to grant. See Robinson Tool & Die, Inc. v. Gross, Ky., 432 S.W.2d 443, 445; Payne v. Hall, Ky., 423 S.W.2d 530; and Commonwealth Dept. of Highways v. Williams, Ky., 317 S.W.2d 482. CR 59.06 provides that it is unnecessary to present a claimed error in a motion for a new trial if the alleged trial-court error was otherwise properly preserved. Here, the alleged error was not otherwise properly preserved.

■ Appellant sought to present various conductor's reports reflecting the switching movements and the presence or absence of freight cars in the siding that serves the Brown & Williamson Tobacco Warehouse. The witness who undertook to present the reports was not the company official who made the records, nor were they under his custody. Neither was there any explanation of the absence or unavailability of the person or persons who made the records. More importantly, the records were negative in nature. They simply tended to show that there had been no order for freight cars to serve on the Brown & Williamson siding during the pertinent period. The witness admitted that the records did not reflect a physical check of the tracks, so that it is entirely possible that a car could have

been on the siding without that fact being reflected in the conductor's reports. The issue arose because Martin testified that there was a car on the siding which further obscured his vision in negotiating the curve, whereas it was the contention of the appellant that there was none present. In any event, there could be no prejudicial error resulting from this ruling of the trial court. Martin said the car further obscured his vision, which means that his range of vision was diminished, and under the yard-speed rule he was required to travel at such a rate of speed as would permit his stopping in half the distance of his range of vision. If, as maintained by the appellant, there had been no car present, Martin's range of vision would have been somewhat greater, so his permissible speed, under the rule, would have been somewhat enlarged. The net effect of showing a car on the siding was to impose a slower speed limit on Martin. Since there was much other evidence tending to show negligence on the part of the railroad, the matter of the car on the siding had no significant bearing in the trial anyway.

In a pretrial order the court directed that the issues relating to appellant's counterclaim should be tried separately from the issues relating to Martin's claim against the railroad. Ultimate trial upon the counterclaim was conditioned upon the jury's verdict in the trial of Martin's claim in the matter of the respective negligence of the litigants. After the jury had returned its verdict ascribing 70% of the responsibility to the railroad and 30% to Martin, the trial court dismissed the counterclaim on the basis that the railroad's negligence foreclosed its recovery on the counterclaim. In this we think the court was correct. The usual common-law rule is applicable insofar as the railroad's claim against Martin is concerned, so that the railroad's contributory negligence would bar its claim against Martin. It is only by virtue of the provisions of the FELA that Martin's claim

is not barred by his contributory negligence. We think the rationale of Blue Valley Creamery Company v. Cronimus, 270 Ky. 496, 110 S.W.2d 286, rules the point under consideration. Here, the basic question of the respective negligence of the litigants was fairly tried, and it would serve no useful purpose to retry the same issue between the same litigants looking toward an ultimate dismissal of the railroad's claim, in view of the fact that the railroad has already been found negligent in causing the accident. We do not perceive that the jury would, or could, have made a different finding as to the respective percentages of negligence just because it had before it the appellant's counterclaim.

The judgment is affirmed.

All concur.